NO. 07-06-0199-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 14, 2008

_____

RANDY BIRKENFELD,

Appellant

v.

METRO GENERAL MANAGEMENT, INC.,

Appellee

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-523,580; HON. WILLIAM C. SOWDER, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Randy Birkenfeld (Birkenfeld) appeals from a judgment entered by the trial court with respect to his claims against appellee Metro General Management, Inc. (Metro). Metro also appealed. The dispute between the two arose from Metro's sale of an auto stereo business to Birkenfeld. The latter, through four issues, contends that the trial court erred in 1) denying his motion for partial summary judgment under the Structured

Settlement Protection Act, 2) entering judgment based upon a finding that he failed to pay the franchise purchase fee, and 3) denying him attorney's fees. In turn, Metro asserts that the trial court erred in 1) submitting to the jury the question whether its attempt to lock Birkenfeld from the premises and business was a breach of the Franchise/Purchase Agreement, 2) submitting jury questions regarding its violation of the Deceptive Trade Practices Act (DTPA), 3) failing to disregard the jury's answer regarding Birkenfeld's damages because that evidence did not constitute present sense recorded, 4) rendering judgment in accordance with the jury's finding that Birkenfeld did not fail to pay the franchise purchase fee or price and that no damages should be awarded for Birkenfeld's failure to pay operating fees, 5) failing to award it attorney's fees, and 6) dissolving the deed of trust Birkenfeld gave it. We modify the judgment and affirm it as modified.

### *Background*

Metro owned two retail stores in Lubbock. Birkenfeld worked at one of the stores for approximately ten years and considered purchasing the 34th Street location. Eventually, the two entered into a Franchise/Purchase Agreement encompassing the sale of the 34th Street location. According to the agreement, Birkenfeld was to pay Metro $60,000 for goodwill and a license to operate the store, $10,000 for furniture, fixtures, and equipment, $30,000 for current inventory, and $22,000 for a Dodge pickup. So too did Birkenfeld agree to pay a weekly operating fee of $400 or 8% of all gross income, whichever was greater. The parties also contemplated that Birkenfeld would pay $100,000 of the expense through an assignment of a $100,000 payment he was to receive on September 8, 2003. The payment was part of a structured settlement periodically received by Birkenfeld after suffering injuries as a minor.

2

The parties also executed a separate lease agreement for Birkenfeld's use of the building.  Under that agreement, he obligated himself to pay a monthly rental of $2,000 plus property taxes.  And, as security for performing these obligations, Birkenfeld granted Metro a deed of trust on some property he owned.

Birkenfeld began operating the 34th Street location in August 2002.  However, he fell behind in paying the operating fees and rent.  Thereafter, he conveyed to Metro a 1992 Dodge Viper in satisfaction of approximately $47,000 worth of the arrearage.  Metro nonetheless continued to assert that it was owed money.  So, on September 11, 2003, and without prior notice, Metro locked Birkenfeld and his employees out of the business premises.  It then sold the business, the inventory,  tools, and Birkenfeld's personalty to another party.  These circumstances formed the basis of the suit from which this appeal arose.

### *Issue 1 - Assignment of Annuity Benefits*

Birkenfeld's first issue is twofold.  First, he asserts that the trial court erred in refusing to grant his motion for partial summary judgment wherein he sought a ruling that vitiated his assignment of the $100,000 payment.  Then he argues that the trial court erred in refusing to void the assignment after trial.  Birkenfeld believed himself entitled to such relief because the transfer purportedly failed to comply with the Texas Structured Settlement Protection Act and, therefore, was void.  We overrule the issue.

As for the failure to grant the partial summary judgment, we note that the issue underlying said motion was ultimately tried to the jury.  Having been so tried, any complaints about the trial court's decision *viz* the motion were rendered moot.  *Fling v.*

3

*Steed,* No. 07-99-0450-CV, 2001 Tex. App. LEXIS 1585 at *11 (Tex. App.–Amarillo March 12, 2001, pet. denied).

Next, whether the assignment was valid formed the basis of a prior declaratory action. That action resulted in the entry of an agreed order wherein the trial court ruled that the assignment was "valid and enforceable," that Metro owned the $100,000 payment, and that the insurance company from which payment was to come pay the sum to Metro. More importantly, no one appealed the decree; rather each party "approved" it "as to form and content" and allowed it to become final.

Once the dispute between the parties began, however, Birkenfeld again questioned the enforceability of the assignment and asked the trial court to rule on the matter as part of this legal proceeding. According to Birkenfeld, the conveyance was void because it failed to comport with various provisions of the Texas Structured Settlement Protection Act, TEX. CIV. PRAC. & REM. CODE ANN. §§141.001-141.007 (Vernon 2005), and that those provisions could not be waived.

That the current effort to question the assignment constitutes a collateral attack upon the prior decree is clear. *See Browning v. Prostok,* 165 S.W.3d 336, 346 (Tex. 2005) (describing a collateral attack as an attempt to avoid the binding effect of a judgment in a proceeding brought to obtain some specific relief which the prior judgment bars). While one may collaterally attack a void judgment, *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex. 1985), a judgment is void only when the rendering court lacked personal or in rem jurisdiction over the parties or res, lacked subject matter jurisdiction, lacked jurisdiction to enter the particular judgment, or lacked the capacity to act. *Browning v. Prostock,* 165

S.W.3d at 346. Moreover, a distinction must be drawn between a trial court's failure to exercise a power in accordance with a statute and the ability to exercise a particular power to begin with; while lacking the ability to exercise a power may render the act void, having the ability to act but failing to do so in accordance with the law merely renders the decision voidable. *Parkins v. Martin*, 395 S.W.2d 862, 866 (Tex. Civ. App.–Amarillo 1965, writ ref'd n.r.e.). And, we construe the circumstances before us as falling within the latter category.

According to the record, the trial court that executed the prior decree was a district court. Furthermore, we know of no other court (county, justice or the like) that had exclusive jurisdiction over the amount or topic in dispute. Consequently, the district court rendering the prior decree had general subject matter jurisdiction to act on the matter. *See* TEX. CONST. art. 5, §8 (stating that a district court has original and concurrent jurisdiction over all matters not within the exclusive jurisdiction of another court).

Additionally, it cannot be doubted that the parties submitted themselves to the court's jurisdiction. Indeed, their signature on the decree evinces as much. And, concerning the prior court's authority or capacity to adjudicate whether the assignment was valid, the statute mentioned by Birkenfeld states that an assignment of the ilk in question shall be ineffective "unless the transfer has been approved in advance in a final court order . . . ." TEX. CIV. PRAC. & REM. CODE ANN. §141.004 (Vernon 2005). Since the statute contemplates approval by a trial court, we cannot but hold that district courts have the capacity to determine the enforceability of an agreement through which one assigns settlement benefits to another.

So, given the circumstances before us, we cannot say that the district court rendering the prior decree lacked either jurisdiction or capacity to do so. Thus, the decree

5

was not void. At most, the prior court simply failed to abide by aspects of the Structured Settlement Protection Act which merely rendered its decision voidable through a direct appeal. And, being voidable as opposed to void, it was not susceptible to collateral attack via the cause now before us.

### *Issue 2 and Cross-Issue 4 – Breach of Franchise/Purchase Agreement*

Birkenfeld next asserts that the trial court erred in entering judgment against him for damages related to his failure to pay the franchise fee when the jury found that he had not failed to pay it. We overrule the issue.

In response to Question No. 7, the jury answered "no" when asked whether Birkenfeld breached the agreement by failing to pay the aforementioned fee or purchase price. However, in response to Question No. 10(1), it answered $60,000 when asked to determine the sum which would reasonably compensate Metro for that supposed breach.[1] These two answers purportedly conflicted because damages could not be awarded to recompense an act that did not breach the contract. So, the answer to issue 10(1) had to be discarded, according to Birkenfeld. Yet, he did not complain about the alleged conflict before the trial court discharged the jury. That was required to preserve the complaint for appeal. *KMG Kanal-Muller-Gruppe Deutschland GMBH & Co. KG v. Davis,* 175 S.W.3d 379, 392 (Tex. App.–Houston [1st Dist.] 2005, no pet.); *Columbia Medical Center of Las*

---

[1]The jury found in response to Question No. 6 that Birkenfeld failed to comply with the Franchise/Purchase Agreement by failing to pay the operating fee but found in response to Question No. 10(2) that no damages should be awarded for that act.

*Colinas v. Bush,* 122 S.W.3d 835, 861 (Tex. App.–Fort Worth 2003, pet. denied). Therefore, the alleged conflict was waived.[2]

Through cross-issue four, Metro complains about the jury's decision to award no damages for Birkenfeld's failure to pay operating fees. Assuming *arguendo* that the contention has merit, we conclude that Metro suffered no harm from the purported mistake. This is so because the damages awarded it per the jury's answer to question 10(1) (*i.e.* failure to pay the franchise fee or purchase price) totaled $60,000. Yet, according to Metro, all that was due it from Birkenfeld's omission regarding the payment of the purchase price was $22,000. So, Metro effectively received $38,000 to which it was not entitled. More importantly, this excess more than covered the range of operating fees Metro considered due from its opponent, that range being from $1,127.93 to approximately $10,000.

We further reject Metro's allegation that it proved, as a matter of law, that Birkenfeld omitted to pay the remaining $22,000 of the franchise purchase fee. The fee apparently consisted of a licensing fee and goodwill equal to $60,000, furniture, equipment and fixtures valued at $10,000, inventory worth $30,000, and $22,000 for a Dodge pickup that Birkenfeld was to buy. Combining each item revealed a total fee of $122,000. Moreover, the record illustrates that $100,000 of that total was paid through the assignment of the aforementioned structured settlement payment. This left a balance of $22,000, a sum which happened to equal the cost of the Dodge truck. Yet, as of the time of trial, Metro had

---

[2]Our disposition of this point effectively moots that portion of Metro's fourth cross-issue involving the jury's answer to question seven. According to Metro, it had proved, as a matter of law, that Birkenfeld did fail to pay the fee. Since we determined that Birkenfeld waived complaint about the jury's award of $60,000, it matters not how the jury answered question seven.

possession of that vehicle. Because Metro had possession of it, some evidence existed upon which a jury could have reasonably concluded that Birkenfeld did not owe the $22,000 attributable to it and that the answer to issue seven was "no."

### *Issues 3 and 4 and Cross-Issue 5 - Attorney's Fees*

Issues three and four and cross-issue five deal with the trial court's refusal to award either party their attorney's fees. Both litigants assert that they were prevailing parties and, thus, entitled to same. Moreover, the jury found that both litigants incurred reasonable attorney's fees equal to $30,000 "for preparation of trial," $10,000 "for an appeal to the Court of Appeals," and $7,500 "for an appeal to the Supreme Court . . . ." We overrule the complaint of Metro and sustain that of Birkenfeld.

An award of attorney's fees for prevailing upon a claim of breached contract or deceptive trade practice is mandatory. *Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751 (Tex. App.–Houston [14th Dist.] 2005, no pet.). But, to prevail, one must both successfully prosecute a cause of action and recover damages related to that cause. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 201 (Tex. 2004); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

Here, while the jury determined that Birkenfeld had breached the agreement by neglecting to pay the operating fees and report gross weekly sales, it awarded Metro no damages related to those acts. And, to the extent that damages were awarded for Birkenfeld's purported failure to pay the franchise purchase fee or price, the jury found that he had not breached the agreement in that way. So, the circumstances before us do not

8

satisfy the requirements of *Mustang* or *Green*, and the trial court did not err in denying Metro attorney's fees.

As for Birkenfeld's request for attorney's fees, we note that the jury found that Metro breached the purchase agreement by locking him out of the premises and business. So too was Birkenfeld awarded damages for breaching the agreement. Consequently, the trial court was obligated to award him attorney's fees, and it erred by not doing so.

### *Cross-Issue 1 - Breach of Franchise/Purchase Agreement by Lockout*

Through its first cross-issue, Metro contends that the trial court erred in asking the jury whether Metro breached the purchase agreement by locking out or excluding Birkenfeld from the business premises. This was purportedly so because Metro had no obligation to allow Birkenfeld on the premises that he leased since the lease said nothing about granting him access to the property. We overrule the issue.

Implicit in every lease is a covenant of peaceful enjoyment. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Companies, Inc.,* 217 S.W.3d 653, 666-67 (Tex. App.–Houston [14th Dist.] 2006, pet. denied). In other words, the law expressly grants the lessee a right to enjoy that which he leased without impermissible interference from the lessor. So too does the law recognize the requirement that one party to a contract avoid interfering with the other party's performance of its contractual duties. *Case Corp. v. Hi-Class Business Systems of America, Inc.,* 184 S.W.3d 760, 770 (Tex. App.–Dallas 2005, pet. denied). So, it matters not whether Metro and Birkenfeld expressly stated in the lease before us that Birkenfeld had access to the leased property; the right was implied by law.

9

### *Cross-Issue 2 - Consumer Status*

Next, Metro argues that the trial court erred in also asking the jury if Metro violated the DTPA because Birkenfeld was not a consumer under that statute. We overrule the issue.

According to the DTPA, a consumer is one who "seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE ANN. §17.45(4) (Vernon Supp. 2007). Moreover, goods are defined as "tangible chattels or real property purchased or leased for use," *id.* §17.45(1), and services are defined as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." *Id.* §17.45(2).

Here, Birkenfeld purchased not only the right to sell electronic equipment and like intangibles but also $30,000 worth of purportedly merchantable inventory located on the premises, a 1999 Dodge pickup, the services of one of Metro's advisory personnel, and the option to purchase inventory through Metro (which could be categorized as a service as well). Given these circumstances, we cannot say that the primary object in purchasing the business in question consisted of acquiring general intangible assets (as suggested by Metro) and find no error in the trial court determining that Birkenfeld was a consumer under the DTPA. *See Clary Corp. v. Smith,* 949 S.W.2d 452, 464-65 (Tex. App.–Fort Worth 1997, pet. denied) (finding services such as factory leads, local trade show support, copies of a sales video, one percent annual advertising discount, annual prospect lists, an engineering, testing, and sales support package, and a sales training program to be the primary object of the purchase of a distributorship).

### Cross-Issue 3 - Admission of Damages

Metro next complains of the admission into evidence of Exhibits 17, 19, 20, 22, and 23 which were lists made by Birkenfeld of his damages related to his conversion claim. In these exhibits, Birkenfeld assigned a value to various items of his personal property within the store when Metro locked him out and sold the business to a third party. Before us, Metro contends that the items were not admissible as an exception to the hearsay rule. We overrule the issue.

To the extent that the court's reference, during trial, to "present sense recorded" intimated that the documents here were admissible as an exception to the hearsay rule, Birkenfeld did not object to that determination. Indeed, his objection said nothing of hearsay. Moreover, when read in context, the trial court was not considering the documents as some form of hearsay and admitting them under an exception to the hearsay rule. Rather, it viewed the evidence simply as Birkenfeld's effort to itemize, in writing, the nature of the property Metro converted and place a value on them. And, Metro does not attempt to illustrate on appeal why the evidence, when viewed in that context, was inadmissible. Nor does it reassert here the objections it uttered below. Consequently, the dispute was waived. *See Hoxie Implement Co., Inc. v. Baker,* 65 S.W.3d 140, 151 (Tex. App.–Amarillo 2001, pet. denied) (holding that when the complaint on appeal does not comport with that asserted at trial, the issue is waived).

### Cross Issue 6 - Deed of Trust

Finally, Metro asserts that if we modify the final judgment in its favor, then we must also reverse the trial court's decision to dissolve the deed of trust granted Metro by its

opponent.  Because our decision does not so modify the judgment, the foundation underlying Metro's argument is missing.  Thus, we overrule the contention.

Accordingly, we modify that portion of the judgment wherein the trial court denied Birkenfeld his attorney's fees, order that Birkenfeld recover attorney's fees from Metro in the sums found by the jury, that is, $30,000 for trial preparation, $10,000 for an appeal to this court, and $7,500 for an appeal to the Texas Supreme Court, and affirm the judgment as modified.


Brian Quinn
Chief Justice


Pirtle, J., concurs in the result.

12