**Opinion filed May 21, 2009**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-07-00377-CV**

_____

**PENNER CATTLE, INC., Appellant**

**V.**

**BILL COX AND TOM NIX, Appellees**

**On Appeal from the 259th District Court**

**Jones County, Texas**

**Trial Court Cause No. 20,519**

**O P I N I O N**

Penner Cattle, Inc. filed suit against Bill Cox and Tom Nix alleging breach of contract. Cox and Nix counterclaimed, asserting a reciprocal breach of contract claim. The trial court conducted a bench trial, found for Cox and Nix on the liability issues, and awarded Cox actual damages of $252,712.14 and conditional attorney's fees in the event of an appeal. We modify and affirm in part and reverse and remand in part.[1]

I. *Background Facts*

Bill Cox is a livestock dealer. Tom Nix approached him and asked if he knew of anyone who wanted to run cattle on hay grazer. Cox mentioned this to Larry Yoder, a broker, and told him

---

[1]We modify the trial court's judgment to show that it was "IN THE 259TH JUDICIAL DISTRICT COURT OF JONES COUNTY, TEXAS," rather than in "TAYLOR COUNTY."

that the hay grazer would support 300 to 400 head of cattle. Yoder contacted Dennis Penner. Penner was interested, and on behalf of Penner Cattle, he entered into a contract with Cox. The contract required Cox to acquire and maintain the cattle. Penner was responsible for the purchase cost; the cost of feed, medicine, and transportation; and 35¢ per pound for all weight gained.

Cox acquired 323 head in June and July of 2003. Penner reimbursed Cox for his costs. The cattle were transported to Nix's property. In early September, Cox told Yoder that the grazing was getting short and that the cattle needed to be picked up. The cattle were not shipped until October 23, 2003, when 201 head were transported. Whether because Penner did not send enough trucks or because Nix was claiming a security interest to secure payment of his expenses is unclear, but Nix kept 98 head of cattle.[2]

What is clear is that the parties disputed what Penner owed for medicine, feed, and transportation costs. Penner received a bill for $23,353.75. Yoder requested but did not receive supporting documentation. He reviewed the contract and calculated that Penner owed only $19,337.93. Penner wired that amount to a third party with instructions to deliver the funds to Cox when the 98 head were released. Nix did not release the cattle but sold them in March 2004 for $49,783.14. Cox claimed that Penner now owed $29,705.74. The increased bill was due, in part, to grazing charges incurred after October 23. When the cattle were sold, Nix was paid and the balance of the funds was given to Cox's counsel.

## II. *Issues*

Penner challenges the judgment with four issues. We need only address the first issue, which alleges that the trial court's consequential damage award is against the great weight and preponderance of the evidence.

## III. *Analysis*

### A. *Standard of Review*.

Penner asserts in his issue a factual sufficiency challenge to the trial court's damage award. In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight

---

[2]While in Nix's care, 24 head died.

2

of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

    *B. Lost Profits.*

    The trial court awarded Cox breach of contract damages totaling $252,712.14. This represented $34,000 in attorney's fees, direct damages of $43,712.14, and consequential damages in the form of lost profits of $175,000. Cox calculated this by assuming that Penner had timely paid for the cattle's medicine, feed, and transportation and that he had then invested this money in the cattle business. Cox testified that he would have purchased a load of cutting bulls and sold them in 50 to 60 days for a profit of $6,000 to $7,000. Cox testified that he was familiar with the market and that he could have repeated this investment every 60 days. Cox testified that, because over four years had elapsed since the dispute arose, he had lost 25 cattle investment opportunities and a total of $175,000.

    The trial court's award is based upon factually insufficient evidence for three reasons. First, there was insufficient evidence that lost profits were reasonably foreseeable. Second, Cox's testimony was conclusory. Third, the evidence indicates that Nix not Cox was deprived of funds and that Nix was repaid when the 98 head of cattle were sold in March 2004.

    Generally, the measure of damages for breach of a contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied). This measure may include reasonably certain lost profits. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Lost profits may be in the form of direct damages – that is, profits lost on the contract itself – or in the form of consequential damages – such as profits lost on other contracts resulting from the breach. *Mood*, 245 S.W.3d at 12. But to recover consequential lost profits, a claimant must show the parties contemplated at the time they made the contract that such damages would be a probable result of the breach. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

    Cox points to Penner's testimony to establish foreseeability. Penner agreed that the cattle business can be profitable; that a knowledgeable person can successfully invest in the business; and that, if Cox and Nix did not receive the money they were owed, they would be damaged because of their inability to invest that money in the future. Obviously, in any breach of contract case, the

3

failure of one party to pay another will deprive the innocent party of the use of that money. Prejudgment interest compensates injured parties for this damage, and we note that Cox received 7.75% prejudgment interest on his damages.[3]  *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 388 (Tex. App.—Houston [14th Dist.] 2004, no pet.).   If Cox's testimony were sufficient, there would be no need for the foreseeability rule in commercial contract disputes because his testimony would be true in almost all instances.   Because Cox did not establish that the parties contemplated any damages beyond those inherent with a breach of contract, the trial court's award is based upon factually insufficient evidence.

Cox also failed to offer sufficient evidence to establish a $175,000 loss.  To recover lost profits, one must prove them with reasonable certainty and with competent evidence.  *Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  The trial court had nothing more than Cox's opinion that he could have profitably bought and sold a load of cutting bulls every 60 days.  Cox is qualified to render expert testimony on the cattle business, and opinions or estimates of lost profits may be competent evidence – if that opinion or estimate is based on objective facts, figures, or data from which the amount of lost profits may be ascertained.  *KMG Kanal-Muller-Gruppe Deutschland GmbH & Co. v. Davis*, 175 S.W.3d 379, 391 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Cox failed to provide the trial court with any objective evidence to substantiate his opinion.  *See Texaco, Inc. v. Phan*, 137 S.W.3d 763, 772-73 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (owner's bare assertion of a profit margin of a certain percent, even one based on prior experience, was not sufficient evidence to support an award of lost profits).

Finally, Cox failed to establish that he, rather than Nix, was deprived of the use of the money. Cox testified that he had been fully paid for the cattle and for his charges and expenses.  The original disputed items were charges that Nix had incurred for medicine, feed, and pasture.  At trial, Cox and Nix also testified that the cattle lost weight because they were not timely picked up and that they lost

---

[3]The problem with combining two forms of damage for lost use of money is illustrated by the result in this case. Assuming a present value of $43,712.14, a future value of $218,712.14 (43,712.14 + 175,000), and a payoff in 50 months, Cox's testimony assumes an annual rate of return of 46.73%. The 7.75% prejudgment interest began accruing on March 3, 2004. Over 50 months, Cox's $175,000 lost profits award earned prejudgment interest of $63,935.61. When this is combined with his lost profits, the original $43,712.14 grew to $282,647.75 (43,712.14 + 175,000 + 63,935.61) – a rate of return of 55.89%.

profits of $11,982.32. Cox testified that the damage award would go to him and that he would then pay Nix. Thus, if anyone lost the use of money, it was Nix. But Nix was paid in full when the 98 head of cattle were sold in March 2004. Because it was Nix who lost the use of the money and because Nix was paid in early 2004, Cox failed to present sufficient evidence that Penner's failure to pay caused him to suffer lost profits for 50 months. Penner's first issue is sustained. This holding makes it unnecessary to address Penner's remaining issues.

## IV. *Holding*

As to the claims between Penner and Cox, the judgment of the trial court is reversed and remanded for a new trial. Because Cox's consequential damage claim is unliquidated, the new trial shall include liability and damages. *See* TEX. R. APP. P. 44.1(b). As to the claims between Penner and Nix, no complaint is made regarding either the liability findings or the trial court's failure to award damages to Nix. Therefore, the trial court's judgment involving the claims between Penner and Nix is affirmed. Additionally, the trial court's judgment is modified to reflect that it is from "Jones" County.


RICK STRANGE

JUSTICE


May 21, 2009

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.

5