**Opinion issued October 10, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00183-CV

_____

**TRITON CONSULTING INC., FORMERLY KNOWN AS TRITON CONSULTING LLC, Appellant**

**V.**

**SIMON VANDYK, LAURA VANDYK, TOUCHSTONE DISTRICT SERVICES, LLC, COLEEN CULPEPPER, MICHAEL WILLETT, AND CALEP ESTES, Appellees**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-13091**

---

## MEMORANDUM OPINION

Appellant Triton Consulting Inc. appeals from the trial court's order granting summary judgment in favor of Appellees on its breach of contract claim. In four issues, Triton argues the trial court erred in granting summary judgment because

(1) the settlement agreement between the parties is an enforceable contract that may be enforced via a breach of contract action, (2) its claim for breach of contract is not a collateral attack on a final judgment, (3) it did not waive its right to pursue a breach of contract action, and (4) it presented evidence on each element of its claim to preclude summary judgment and Appellees failed to present competent summary judgment evidence entitling them to summary judgment.

We reverse and remand.

## Background

Appellant Triton Consulting Inc. is a communications consulting firm that "predominantly render[s] services for small government entities" in Texas. Triton is a consultant to the boards of various municipal and special purpose districts such as Municipal Utility Districts ("MUDs"), Emergency Services Districts, and Municipal Management Districts, among others, primarily in Harris, Fort Bend, Denton, and Collin Counties in Texas. According to its founding member, David Aitken IV, Triton's main function "is to help municipal districts develop communication tools and adopt strategies to improve transparency . . . while bolstering the[ir] . . . communication with the community." Triton provides its clients with advice "in all matters of public outreach and information dissemination," including "outreach initiatives, community educational and awareness programs, online presence development, public relations, crisis

2

management, technology development, strategic advisement, and emergency alert services."

At one time, Triton employed five of the six Appellees. Triton hired Appellee Calep Estes as its Information Technology Director in 2014, requiring him to sign a non-disclosure agreement. Triton hired Appellee Simon VanDyk ("Simon") as an independent contractor in 2016, requiring him to sign both non-compete and non-disclosure agreements. Appellee Coleen Culpepper was hired as Triton's Administrative Director in 2018. And in 2017, Triton hired Appellee Michael Willett as its Content Manager and Customer Service Representative, requiring him to sign both non-compete and non-disclosure agreements.

Appellee Laura VanDyk ("Laura"), Simon's wife, formed and registered Appellee Touchstone District Services, LLC with the Texas Secretary of State in June 2018. Touchstone is in direct competition with Triton. In July 2018, Simon, Willett, Estes, and Culpepper resigned from Triton and began to work for Touchstone. Triton claims that after their resignations, it "uncovered spoliated evidence demonstrating [that Appellees had] breached their respective non-disclosure agreements, duplicated all Triton server data and documents, and misappropriated [Triton's] trade secrets and other confidential and proprietary information."

3

## A. The 2018 Lawsuit

In 2018, Triton sued Appellees Simon, Laura, Willett, Estes, Culpepper, and Touchstone[1] for breach of contract, tortious interference, misappropriation of confidential information, theft of trade secrets, unfair competition, and civil conspiracy ("2018 Lawsuit").[2] Triton successfully sought a temporary restraining order and, subsequently, a temporary injunction that prohibited Appellees from, among other things, "[s]oliciting business with the clients of [Triton] for the purposes of establishing or continuing a commercial relationship involving the provision of services of the same type provided by [Triton]" and "[p]roposing to enter into business with the clients or prospective clients of [Triton] to provide services of the same type provided by [Triton] using [Triton's] confidential and property information."

Trial began on June 24, 2019. During a recess on June 25, 2019, the parties announced they had "reached an agreement for a resolution of the case" and had

---

[1]    It is unclear whether Touchstone was an original defendant or added later in subsequent pleadings.

[2]    The 2018 Lawsuit is captioned *Triton Consulting, LLC v. Simon VanDyk, Laura VanDyk, Touchstone District Services, LLC, Colleen Culpepper, Michael Willett, and Calep Estes*, No. 2018-46007, in the 189th District Court of Harris County, Texas.

"settled this case."[3]  The parties then dictated the terms of their settlement into the record:

| | |
|---|---|
| Mr. Rosenberg:[4] | So there are two components – several components of the settlement.  The first is a cash payment jointly and severally from all the defendants to the plaintiffs in the amount of $200,000, payable as follows: $40,000 within 90 days, and then after that, $160,000 payable monthly within three years.  The approximate monthly amount is 4,444.44.  There's going to be an agreement – or an agreement on the part of the defendants jointly and severally not to solicit any current clients of Triton, and we will put that in the formalized settlement agreement. |
| | There will be a held agreed judgment, meaning that it will not be filed upon the record of the papers of the cause unless there is a breach, and the parties will exercise their remedies for that. |
| | There is a continuing agreement on the part of the defendants, jointly and severally, not to use any of plaintiff's property or confidential proprietary information to the extent they have any.  And obviously, last is the Court would retain jurisdiction to enforce the settlement. |
| Mr. Martin:[5] | Two – add two more provisions as well, too. |

---

[3]  Although the terms of the settlement were confidential and the hearing involving the settlement was sealed, the transcript was included in the (unsealed) clerk's record in the present appeal and both Triton's and Appellees' briefs liberally quote the sealed portion of the reporter's record from the 2018 Lawsuit.

[4]  Mr. Rosenberg was trial counsel for Triton.

[5]  Mr. Martin was trial counsel for Simon, Laura, and Touchstone.

|  | So the parties have agreed that the settlement agreement, the terms, and the agreed judgment are all to be confidential and only disclosure will be allowed by the parties is that the case has been resolved and the case has been settled. |
|---|---|
|  | Another provision is that there will be a non-disparagement provision amongst the parties – |
| Mr. Rosenberg: | Mutual. |
| Ms. Garcia-Martin:[6] | Mutual. |
| Mr. Martin: | – mutual non-disparagement provision with the parties. |
| Mr. Martinez:[7] | Which – but does allow the parties to tell whoever is inquiring that the lawsuit has been resolved. |
| Mr. Martin: | And the last thing is that there will be no prepayment penalty should the defendants wish to pay the entire balance of the agreed settlement beforehand. |
|  | . . . |
| Mr. Martinez: | And the – the injunction not to solicit is pursuant to certain terms.  Can you say this by a case? |
| Mr. Rosenberg: | Pursuant to Texas law, there's a case out of the Fourteenth Court of Appeals called |

---

[6]     Ms. Garcia-Martin was trial co-counsel for Simon, Laura, and Touchstone.

[7]     Mr. Martinez was trial counsel for Culpepper, Willett, and Estes.

Athens, A-T-H-E-N-S.[8]  I don't have the citation, but the word "solicit" was recently defined by the Fourteenth Court of Appeals in that case.

Mr. Martinez:     And lastly, the term of the non-solicit is for one year, starting when?

Mr. Rosenberg:     The date of the – would be this morning and start today.

Mr. Martinez:     Make it easier, 365 days, starting – today is Day 0, and tomorrow is Day 1?

Mr. Rosenberg:     Correct.

Mr. Martin:     And on the release itself – it will be a full release of all the defendants of all current causes of actions and any known or unknown causes of action.

Mr. Rosenberg:     Counterclaims as well.

Mr. Martin:     Correctly. [sic]

Mr. Rosenberg:     That's it.

Mr. Martinez:     Mutual releases.

Mr. Rosenberg:     Yes.

The Court:     All right.  Does this reach the – is this is the entire – entirety of the agreement between the parties?

Mr. Rosenberg:     Yes.

---

8     Presumably, the reference is to *In re Athans*, 478 S.W.3d 128, 135 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (defining term "solicit").

7

Mr. Martin:     Well, we will now paper the settlement agreement, Your Honor.

The Court:      Correct, but it's – it's on the record. I'm going to pronounce it – render a judgment here on the record as dictated so I want to make sure you dictated all the terms in its entirety here on the record.

Mr. Martin:     Do you want to draft the settlement?

The Court:      Because once I do those magic words, you're done.

Mr. Martinez:   I can – I can draft it.

Mr. Rosenberg:  Generally, you're the one paying, you would do it, but –

Mr. Martin:     That's fine.

Mr. Rosenberg:  – I'm happy to.

Mr. Martin:     Either way.

Mr. Rosenberg:  Okay. Why don't you do it, and we'll take a shot at –

Mr. Martinez:   The parties are in mutual releases for execution and then dismissal of the case.

Mr. Martin:     Defendants will get you a draft within two weeks.

Mr. Martinez:   That's fine.

Mr. Rosenberg:  Two weeks is fine.

| | |
|---|---|
| The Court: | Okay. Does this reach the agreement in its entirety of the settlement between the parties of all issues in this case? |
| Mr. Rosenberg: | Yes. |
| Mr. Martin: | Yes, Judge. |
| Mr. Martinez: | Yes. |
| The Court: | All right. I'll ask your clients here that – <br><br> You're here. You all have heard your attorneys, and you've entered into some discussions herein this morning for a couple of hours. And I applaud your efforts for doing that, but I'm going to ask each one of you if you understand the terms of this settlement agreement? |
| Unidentified Party: | I do. |
| Unidentified Party: | (Moving head up and down.) |
| The Court: | Yes? I have to hear "Yes" or "No." |
| Unidentified Party: | I do. |
| The Court: | Okay. |
| Unidentified Party: | Yes. |
| The Court: | Yes? |
| Unidentified Party: | Yes. |
| The Court: | Yes. Okay. And so we're on the record . . . So that's an affirmative response by all, and I further ask you: Do you have any questions |

9

|  |  |
|---|---|
|  | of your counsel here today before the Court renders a judgment?  No?  No?  No?  No? |
| Unidentified Party: | No, Your Honor. |
| The Court: | Do you have any questions of the Court?  Do you fully understand?  Do you have any questions of me before we go?  No?  No?  No?  No?  All right. |
|  | . . . |
| The Court: | The last thing I'm going to ask you is if you consent to and you request the Court to enter the judgment herein today, as prayed for?  Yes?  Yes?  Yes?  Yes?  "Yes," an affirmative response by all. |
|  | . . . |
| The Court: | The Court will render a judgment herein, as dictated by the terms of your settlement agreement on the record.  Ask that you go forth and prepare the closing documents accordingly.  If there's nothing further, congratulations. |
|  | . . . |
|  | So when it comes back – if there's any question, you come back, look at the record, I've rendered a judgment based on the terms of your settlement agreement.  Case over.  That's it.  Okay?  You're not going to come back and say, "Well, didn't do it." |

A final judgment was later entered, and the lawsuit was dismissed.[9] It is undisputed that the parties did not later reduce their settlement agreement to writing.

According to Triton, within weeks of the parties' settlement agreement, Appellees began disparaging Triton and soliciting its customers. And in "clear awareness that their actions were in breach of the settlement contract," Appellees presented to "Triton proposed agreement papers which attempted to carve out exceptions to the parties' June 25, 2019, settlement contract," which Triton rejected because according to Triton, they were "new terms" inconsistent with the parties' settlement agreement. As of June 2020, Appellees also had not made any of the payments contemplated under the settlement agreement.

## B. The Present Lawsuit

In February 2020, Triton filed the present lawsuit against Appellees asserting claims for breach of contract, tortious interference, misappropriation of confidential information and trade secrets, unfair competition, and civil conspiracy. Triton premised its contract claims on purported violations of the non-competition and non-solicitation agreements signed by Appellees Simon, Willet, and Estes and, separately, on Appellees' breach of the settlement agreement "made at the conclusion of the first trial." By the time Triton filed its second amended petition

---

[9] The judgment from the 2018 Lawsuit is not in the appellate record.

in October 2021, its only remaining claims were its claim for breach of the parties' June 25, 2019 settlement agreement and a claim for contempt of court.[10] Triton alleged that Appellees had breached the settlement agreement "by failing to pay any of the judgment, by failing to make payments in accordance with the payment schedule, by using Triton's confidential proprietary information, by disparaging Triton, and by soliciting Triton's customers."

On October 29, 2021, Simon, Laura, and Touchstone (collectively, "VanDyk Appellees") filed a traditional and no-evidence motion for summary judgment, which Culpepper, Willett, and Estes (collectively, "CWE Appellees") joined on November 1, 2021 (collectively, "Summary Judgment Motion").[11]

In support of their no-evidence Summary Judgment Motion, Appellees alleged that Triton had no evidence to support the elements of its breach of contract claim. And in support of their traditional Summary Judgment Motion, Appellees argued they were entitled to summary judgment on Triton's breach of contract claim because (1) no enforceable contract existed between the parties and (2) Triton's remedy was limited to an action to enforce the final judgment rendered in the 2018 Lawsuit. According to Appellees, Triton could not establish the

---

[10]   The breach of contract claim is the only claim before this Court.

[11]   The CWE Appellees did not assert additional arguments in their joinder. They instead joined the arguments made in the Summary Judgment Motion filed by the VanDyk Appellees.

existence of an enforceable contract because the parties never reduced their settlement agreement to writing and the "contract" Triton was seeking to enforce was "actually a final judgment." Thus, Appellees argued, Triton's remedy was limited "to an action to enforce the judgment."

In response to the Summary Judgment Motion, Triton argued that two distinct events had taken place on June 25, 2019: (1) the parties entered into a settlement agreement that was dictated on the record, and (2) the trial court entered final judgment based on the terms of the parties' settlement agreement, and there was nothing inconsistent about these two events. Triton argued that the failure to reduce the parties' agreement to writing did not render the parties' agreement unenforceable because the essential terms of the parties' settlement agreement were read into the record. To the extent Appellees argued Triton had breached the settlement agreement by failing to execute a written agreement, Triton argued there was no evidence Appellees had presented Triton "with a settlement agreement consistent with those terms prior to the filing" of its action to enforce the agreement. Triton also argued that Appellees' payment of the settlement funds after June 2020 corroborated the terms and existence of the settlement agreement. And it argued that its only obligation under the agreement was to release its claims against Appellees which "was accomplished by the Final Judgment" entered in the 2018 Lawsuit. Triton last argued that Appellees had breached the settlement

agreement contract by soliciting Triton's clients, failing to make settlement payments,[12] disparaging Triton, and using Triton's marketing materials to create "confusion in the industry among clients."  Appellees did not file a reply in support of their Summary Judgment Motion.

On December 7, 2021, the trial court granted the VanDyk Appellees' Summary Judgment Motion dismissing Triton's "claims and causes of actions against the VanDyk Defendants . . . with prejudice."  And on December 9, 2021, the trial court granted summary judgment in favor of the CWE Appellees based on their joinder to the VanDyk Appellees' Summary Judgment Motion dismissing Triton's "claims and causes of action asserted in th[e] lawsuit against" the CWE Appellees with prejudice.[13]  The trial court did not specify the grounds for its rulings.

Triton filed a Motion for Reconsideration and Motion for New Trial, which

---

[12]    Appellees assert they were up to date on all payments identified in the Final Judgment by the time the Summary Judgment Motion was ruled upon.

[13]    Separate from their joinder to the VanDyk Appellees' motion for summary judgment, the CWE Appellees previously filed a traditional and no evidence motion for summary judgment, which the trial court heard on October 4, 2021. The record does not reflect that the trial court separately ruled on that motion, and the trial court's December 9, 2021 order granting the CWE Appellees' joinder does not dispose of their separately filed motion for summary judgment.  The CWE Appellees' motion for summary judgment was filed on May 20, 2021, and the arguments raised therein are thus not before us.

14

the trial court denied. This appeal ensued.[14]

On appeal, Triton argues the trial court erred in granting Appellees' Summary Judgment Motion because it raised a genuine issue of material fact as to each of element of its breach of contract claim, and Appellees are not entitled to summary judgment as a matter of law.

## Standard of Review and Applicable Law

We review a trial court's ruling on a motion for summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a party moves for both traditional and no-evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we need not analyze the arguments raised in the traditional summary judgment motion. *Id.*

A party may move for a no-evidence summary judgment after an adequate time for discovery has passed, asserting that no evidence exists to support one or more essential elements of a claim on which the adverse party has the burden of

---

[14]     Although Triton states in its notice of appeal that it appeals from the trial court's Summary Judgment order and "from any other adverse rulings from the trial court, including the overruling of its motion for new trial," Triton's appellate brief does not address its Motion for Reconsideration or Motion for New Trial. We thus do not address those motions in our opinion. *See Jonson v. Duong*, 642 S.W.3d 189, 194 (Tex. App.—El Paso 2021, no pet.) ("[W]hen an appellant does not adequately brief an issue on appeal in accordance with [Texas] Rule [of Appellate Procedure] 38.1, any error that may have occurred in the trial court is waived.").

proof at trial. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006); *Walker v. Eubanks*, 667 S.W.3d 402, 406 (Tex. App.—Houston [1st Dist.] 2022, no pet.). A no-evidence summary judgment must be denied if the nonmovant brings forth more than a scintilla of evidence raising a genuine issue of material fact. *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists if the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Id.* "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id.* (quoting *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation omitted)).

In reviewing a no-evidence summary judgment, we review the evidence "in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). "To challenge on appeal each possible ground advanced in support of the no-evidence summary judgment, an appellant must cite the specific evidence in the record he relied upon to defeat the motion and he must describe why that evidence raised a fact issue." *Walker*, 667 S.W.3d at 407 (citing *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio

16

2003, no pet.) ("An appellant has a duty to show that the record supports her contentions."); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 868 (Tex. App.—Houston [1st Dist.] 1999) (noting "general" assertions of existence of "genuine issues of material fact" are inadequate), *aff'd*, 73 S.W.3d 193 (Tex. 2002)).

In reviewing a ruling on a traditional motion for summary judgment, "we take as true all evidence favorable to the nonmovant, and we indulge in every reasonable inference and resolve any doubts in the nonmovant's favor." *Walker*, 667 S.W.3d at 407 (citing *Valence Operating*, 164 S.W.3d at 661). To prevail on a traditional summary judgment motion, the movant must establish both that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the movant establishes it is entitled to summary judgment, the burden shifts to the non-movant to raise a genuine issue of material fact to defeat the summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The defendant who moves for traditional summary judgment has the burden to "conclusively negate" at least one essential element of the plaintiff's cause of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). Under the traditional rule, courts "never shift the burden of proof to the non-movant unless and until the movant has establish[ed] his entitlement to a summary judgment . . . by conclusively proving all essential

17

elements of his cause of action or defense as a matter of law." *Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021) (quoting *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989) (internal quotation omitted)).

When, as here, a trial court grants a motion for summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds advanced in the motion are meritorious. *Roadmasters Transp. Co., LLC v. Saens*, No. 01-16-00813-CV, 2018 WL 650291, at *2 (Tex. App.—Houston [1st Dist.] Feb. 1, 2018, no pet.) (mem. op.) (citing *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). If the movant urges multiple grounds for summary judgment and the order does not identify the ground on which the trial court relied in granting summary judgment, the appellant must negate all grounds on appeal. *McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.–Houston [1st Dist.] 2007, pet. denied).

## Discussion

To prevail on a breach of contract claim, a plaintiff must establish that (1) a valid contract exists, (2) it performed or tendered performance as the contract required, (3) the defendant breached the contract by failing to perform or tender performance as the contract required, and (4) it suffered damages as a result of the

18

breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018).

## A.     No-Evidence Summary Judgment

In their no-evidence Summary Judgment Motion, Appellees identified the elements of a breach of contract claim and argued that Triton "lack[ed] any competent summary judgment evidence as [to] any of the elements[.]"  In response, Triton argued that the terms of the settlement agreement in the 2018 Lawsuit

> were fully dictated on the record and reduced to writing via transcription by the official Court reporter for the 189th Judicial District Court.  The Defendants' agreement to comply with the terms (i.e., their "signature") was also transcribed.  The Defendants do not challenge the accuracy of reliability of the official court record.

Triton further argued it had performed its obligations under the settlement agreement—the parties' contract—and that it had presented evidence raising a genuine issue of material facts as to each of the remaining elements of its claim because it presented evidence it performed under the contract, Appellees breached the contract, and Triton had suffered damages as a result.  We analyze each element of Triton's breach of contract claim below.

### 1.     Existence of Contract

The elements of a contract are (1) an offer, (2) acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of

the contract with the intent that it be mutual and binding. *Innovative Vision Sols., LLC v. Kempner*, No. 01-20-00195-CV, 2022 WL 868130, at \*10 (Tex. App.—Houston [1st Dist.] Mar. 24, 2022, no pet.) (mem. op.) (citing *Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2018, no pet.). To determine whether the parties had a meeting of the minds, we utilize an objective standard. *Id.* We consider the meaning reasonably conveyed by what the parties said and did, not their subjective state of mind. *Id.* A contract must be "sufficiently definite to confirm that both parties actually intended to be contractually bound." *Id.* (quoting *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)).

In their Summary Judgment Motion, Appellees argued that there was no contract and thus no evidence to support an essential element of Triton's breach of contract claim because the parties never executed a written settlement agreement.[15]

---

[15] Appellees argue in their appellate brief that their summary judgment evidence "conclusively negated the elements of Appellant's breach of contract claim by applying well established law to the evidence." They argue that Triton "could not show a fully executed contract existed, failed to tender performance, committed a prior material breach, failed to deliver the promised consideration, and in fact, no breach had been committed by Appellees even if a contract existed." But, with the exception of their argument that no contract existed because a settlement agreement was never signed, Appellees did not raise these additional affirmative defenses or arguments in their Summary Judgment Motion. We thus decline to consider them on appeal. *See Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 306 (Tex. App.—Fort Worth 2001, no pet.) ("Simply stated, a summary judgment cannot be affirmed on grounds never presented to the trial court by the motion."); *see also Jourdan v. Jacobs*, No. 04-17-00487-CV, 2018 WL 3634990, at \*4 (Tex. App.—San Antonio Aug. 1, 2018, no pet.) (mem. op.) ("To properly preserve an

Triton responded that the settlement agreement the parties read into the record constituted a valid Rule 11 agreement, which is construed like any other contract. *See* TEX. R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be

affirmative defense for purposes of appeal of a summary judgment, a defendant must expressly present that affirmative defense to the trial court in the summary judgment proceeding . . . and adduce proof supporting that defense.) (citing *TPS Freight Distribs., Inc. v. Tex. Commerce Bank*, 788 S.W.2d 456, 459 (Tex. App.—Fort Worth 1990, writ denied)). For the same reason, we decline to address Appellees' additional arguments concerning the statute of frauds, payment in full, and full compliance none of which Appellees raised in their Summary Judgment Motion. While some of those grounds were argued in the CWE Appellants' motion for summary judgment separately filed on May 20, 2021, the trial court did not rule on that motion for summary judgment, and thus that motion and the arguments raised therein are not before us on appeal. *See Dyegard*, 39 S.W.3d at 306; *Jourdan,* 2018 WL 3634990, at *4. In the absence of a record demonstrating that these additional affirmative defenses were presented to the trial court in the summary judgment proceeding giving rise to this appeal, we may not consider them. *See Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion or response."). We thus grant Triton's Motion to Strike, which requests that we strike the portions of Appellees' brief addressing grounds not raised in their Summary Judgment Motion. We hereby strike those portions of Appellees' brief that argue Appellees were entitled to summary judgment on the basis of the affirmative defenses of failure to tender performance, prior material breach, failure of consideration, payment in full, full compliance, and statute of frauds set forth in pages 32-42 and pages 56-62. We also strike those portions of Appellees' Statement of Facts that rely on exhibits not attached to Appellees' Summary Judgment Motion, and we grant Triton's Motion to Strike Appellees' Appendix, which attached documents not considered by the trial court in the summary judgment proceeding at issue. The appendix comprised two documents, neither of which was attached to the Summary Judgment Motion or Triton's response. *See Dashtgoli v. Eye Care of Austin, P.A.*, No. 03–06–00744–CV, 2008 WL 2852286, at *10 (Tex. App.—Austin July 23, 2008, no pet.) (mem. op.) ("We cannot consider documents attached to briefs that were not before the trial court and are not part of the [summary judgment] record.").

21

made in open court and entered of record."); *Harrison v. Freehill*, No. 03-21-00249-CV, 2022 WL 12069261, at \*4 (Tex. App.—Austin Oct. 21, 2022, no pet.) (mem. op.) (observing Rule 11 agreements are construed like other contracts); *Innovative*, 2022 WL 868130 at \*6 ("Courts construe Rule 11 settlement agreements just as they would any contract.").

In its brief, Triton argues that each term of the settlement agreement was dictated into the record by the parties and that the agreement was understood and agreed to on the record by everyone involved. It further argues that it complied with its obligations under the contract because the 2018 Lawsuit was dismissed, and Appellees were released from the claims advanced in the suit. Triton last argues that the failure to reduce the settlement agreement to writing is inconsequential because the material terms of the agreement were dictated into the record and an "agreement to prepare formal settlement documents in the future does not render an oral settlement contract dictated on the record unenforceable."

As Triton asserts, the terms of the parties' settlement agreement were dictated by the parties into the record in the 2018 Lawsuit. The transcript from the settlement hearing in the 2018 Lawsuit, which Triton attached to its response to Appellees' Summary Judgment Motion, reflects the following settlement terms: (1) a cash payment jointly and severally from all Appellees to Triton in the amount of $200,000, with $40,000 to be paid within 90 days, and the rest within three

years with an approximate monthly payment of $4,444.44, (2) an agreement on the part of Appellees not to solicit any current clients of Triton for one year, (3) a held agreed judgment, meaning the agreement would not be filed upon the record of the papers of the cause unless there was a breach, and the parties would exercise their remedies for that, (4) a continuing agreement on the part of Appellees not to use any of Triton's property or confidential proprietary information, (5) an agreement to keep the settlement agreement, its terms, and the agreed judgment confidential, (6) a mutual non-disparagement agreement, and (7) Triton's full release of Appellees from "all current causes of actions and any known or unknown causes of action" and counterclaims. The parties agreed that the non-solicitation agreement was to begin on June 25, 2019, with a duration of one year, and that the term "solicit" would be defined consistent with the definition of solicit as "a case out of the Fourteenth Court of Appeals, called *Athens*."

Appellees do not dispute that the terms of the parties' settlement agreement were dictated into the record. Rather, they argue that the agreement dictated into the record is not binding because the parties never executed a formal written settlement agreement. But even when parties to a settlement agreement contemplate reducing their agreement to a formal writing, the eventual failure to do so does not by itself render a settlement agreement unenforceable. In deciding the character of an agreement, we determine "whether the parties intended for the

23

contemplated formal writing to be a condition precedent to the formation of a contract, or merely a memorial of an already enforceable contract." *Border Gateway, L.L.C. v. Gomez*, No. 14-10-01266-CV, 2011 WL 4361485, at *3 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.) (mem. op). "Normally, the intention of the parties is a question of fact, but where that intent is clear and unambiguous on the face of the agreement, it may be decided as a matter of law." *Id.*

A "condition precedent to contract formation is 'clearly' evidenced where an agreement unequivocally provides that a party does not intend to be bound until the execution of a final contract." *Id.* In other cases, "an intent not to be bound may be shown as a matter of law where an agreement expressly provides that its terms are 'non-binding' until the satisfaction of some other event." *Id.* Appellees argue that execution of a written settlement agreement was a condition precedent to the formation of a contract and that the summary judgment evidence conclusively established that Triton failed to meet this condition. We disagree.

When asked by the trial court if the parties' recitation of their settlement agreement into the record reflected the "entirety of the settlement between the parties of all issues," all parties responded, "Yes." Counsel for the VanDyk Appellees stated, "Well, we will now paper the settlement agreement, Your Honor," and the trial court responded, "Correct, but its . . . on the record. I'm

24

going to pronounce it . . . render a judgment here on the record as dictated so I want to make sure you dictated all the terms in its entirety here on the record." In response, the parties again confirmed to the trial court that their dictation reflected the entirety of the settlement agreement between the parties, and they further confirmed their agreement to have the trial court enter judgment consistent with their agreement. Pursuant to the parties' agreement, the trial court rendered judgment, and the 2018 Lawsuit ultimately was dismissed. There is nothing in the record suggesting that the parties intended not to be bound until execution of a final written contract, nor did Appellees produce evidence of such an intent. *See id.* (rejecting appellants' argument that mediation agreement was not enforceable because parties had not executed formal settlement agreement, and holding terms of mediation agreement were binding); *see also Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 747 (Tex. App.—Houston [1st Dist. 2014], no pet.) (holding that settlement agreement announced in court was enforceable even though parties contemplated that additional documents would have to be executed because particular terms of additional documents were not essential).

The decision in *Cantu v. Mercy Health Center* is instructive. No. 04-06-00010-CV, 2006 WL 3085703 (Tex. App.—San Antonio Nov. 1, 2006, no pet.) (mem. op.). In *Cantu*, the parties announced settlement on the day of trial, and they dictated the terms of their agreement into the record:

25

| | |
|---|---|
| Appellee's attorney: | Your honor, we have agreed to accept $5,200 as complete and final payment settlement of all accounts due and owing by Dr. Cantu to Mercy Health Center. We have agreed, Your Honor, to leave the case pending. We have given him six months to pay that amount. As soon as the amount is paid in full, whether it be before then or within six months, we will be filing a nonsuit and dismissal with the Court. We've also agreed that upon complete payment Mercy Health Center will notify any of the credit companies that have been notified of these debts that they have been settled in full. |
| Appellant's attorney: | . . . the terms of the settlement agreement will be . . . reduced to writing and put in a compromising settlement agreement. |
| Appellee's attorney: | . . . [the] agreement will be held by the parties only and will not be filed with the Court unless we get to the point where payment isn't made and six months have passed. |

*Id.* at \*1.  On appeal, the appellant argued that the settlement agreement the parties read into the record was not enforceable because it had not been reduced to writing and because it did not "state the consequences of his failure to pay in accordance with the terms of the agreement," among other things.  *Id.* at \*2.  The court of appeals disagreed, noting that the settlement agreement "contained all the material terms of the agreement."  The appellant

agreed to pay $5,200 to appellee within six months; appellee agreed to accept $5,200 as complete and final settlement of all accounts due and

26

owing by appellant; the suit would remain pending, to be dismissed upon full payment; and, upon full payment, appellee agreed to notify the appropriate credit companies that the debt had been settled in full.

*Id.* The court held there was "no indication on the record that the parties contemplated that their agreement would not be binding until it was reduced to writing." *Id.*

Our recent opinion in *Innovative Vision Solutions, LLC v. Kempner*, No. 01-20-00195-CV, 2022 WL 868130 (Tex. App.—Houston [1st Dist.] Mar. 24, 2022, no pet.) (mem. op.) is likewise illustrative. *Innovative* concerned the construction and enforceability of an oral Rule 11 settlement agreement read into the trial court's record. The parties disagreed about the interpretation of the agreement, resulting in a bench trial. *Id.* at *4. Following the bench trial, the court concluded that the parties had entered into an enforceable settlement agreement and this Court agreed, holding that "[w]hen [the parties] read their Rule 11 Settlement Agreement into the record, the parties indicated that they all understood the terms and agreed. The fact that the parties intended to reduce the agreement to a formal written settlement agreement does not prohibit the formation of a binding agreement—agreements to enter into future contracts are enforceable if they contain all material terms." *Id.* at *10 (citing *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013)). We observed that there may be a binding settlement "when

27

parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later." *Id.* (citing *Stergiou*, 438 S.W.3d at 744).

Similarly in the present case, the parties confirmed to the trial court that they had dictated "all the terms" of their settlement agreement on the record and that the settlement agreement read into the record was the "entirety of the agreement between the parties." In addition, they agreed that the non-solicitation terms of the settlement agreement were to begin immediately:

| | |
|---|---|
| Mr. Martinez: | And lastly, the term of the non-solicit is for one year, starting when? |
| Mr. Rosenberg: | The date of the – would be this morning and start today. |
| Mr. Martinez: | Make it easier, 365 days, starting – today is Day 0, and tomorrow is Day 1? |
| Mr. Rosenberg: | Correct. |

And they agreed that the term "solicit" would have the meaning ascribed to that term in the "Fourteenth Court of Appeals, called *Athens*."[16] Appellants did not

---

[16] Appellees do not specifically argue that the lack of definition of "solicit" was a material term that was omitted from the agreement. Rather, they argue that for months, the parties "focused their commentary and efforts on providing clear, enforceable language to define the meaning and scope of 'solicitation' pursuant to the *In re Athens*" as agreed, but that no "clear, enforceable definition of what constituted a 'non-solicitation pursuant to the *In re Athens* case' was ever agreed to" and thus "it was never memorialized in writing or incorporated into a Settlement Agreement." In support, Appellees point to emails between the parties concerning this matter. Appellees, however, did not make this argument in their Summary Judgment Motion nor did they attach to their motion the emails they now reference in their brief. We therefore do not consider the argument or the

28

produce any evidence that the parties intended not to be bound nor did they establish as a matter of law that the parties' dictated agreement manifested an intent not to be bound or that execution of a settlement agreement was a condition precedent to their agreement.[17]

Appellants argue that execution of a written agreement was "one of the central terms in the judgment." Essential terms are those terms "that the parties 'would reasonably regard as vitally important elements of their bargain.'" *Stergiou*, 438 S.W.3d at 744 (quoting *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "Where an essential term is open for future negotiation, there is no binding contract." *T.O.*

---

referenced emails in our analysis. TEX. R. APP. P. 33.1; *see also Rise Above Steel Co., LLC. v. Liberty Mut. Ins. Co.*, 656 S.W.3d 577, 586 (Tex. App.—El Paso 2022, no pet.) (stating argument not made in summary judgment motion may not be raised for first time on appeal).

[17] Although no particular words are necessary for the existence of a condition precedent, "such terms as 'if', 'provided that', 'on condition that', or some other phrase that conditions performance, usually connote an intent for a condition [precedent] rather than a promise." *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). The absence of conditional language is "probative of the parties['] intention that a promise be made, rather than a condition be imposed." *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). "'Because of their harshness in operation, conditions are not favorites of the law.'" *Hohenberg Bros.*, 537 S.W.2d at 3 (quoting *Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784 (Tex. 1966)). The transcript of the settlement conference from the 2018 Lawsuit does not reflect any verbiage that conditions Appellees' performance on Appellant's execution of a written settlement agreement.

*Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).[18]

Whether a Rule 11 settlement agreement fails for lack of an essential term is "a question of law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement." *Stergiou*, 438 S.W.3d at 744 (quoting *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

Appellees argue that a "material term of the June 25, 2019 settlement was that the parties execute" a settlement agreement and mutual release "to effectuate the settlement terms dictated to the Court on June 25, 2019, and for their mutual benefit." In support, they cite to the settlement conference transcript where the parties indicated on the record that the parties would "now paper the settlement agreement," and other portions where the parties alluded to the fact they would put their agreement in writing, including the statement that the non-solicitation agreement would be "put" in a "formalized settlement agreement" and that there

---

[18] *See Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("When an agreement leaves essential (or material) matters open for future negotiation and those negotiations are unsuccessful . . . the agreement 'is not binding upon the parties and merely constitutes an agreement to agree.'") (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)); *see also Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree.") (citation omitted).

would "be a full release of all the defendants of all current causes of actions and any known or unknown causes of action."

Even taking these statements into consideration, there is nothing in the record that suggests the parties regarded the execution of a settlement agreement as an essential term or that their settlement was contingent on the execution of a written agreement. *See Martin v. Black*, 909 S.W.2d 192, 196 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ("The question is the intention of the parties."); *Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, No. 14–09–00772–CV, 2011 WL 2739517, at *2 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet.) (mem. op.) (observing that in determining enforceability of settlement agreement when future documents were to be prepared, "[t]he key question is whether the parties intended for a formal document to be executed as a condition precedent to being bound by contract"). Even if the parties desired to further flesh out their agreement, as this Court has explained, "that parties may provide more definite terms in a later agreement does not answer the question whether the initial agreement addresses all the material terms in a sufficiently definite manner to bind the parties." *Jetall Companies, Inc. v. Jefferson Smith, L.L.C.*, No. 01-20-00461-CV, 2022 WL 2347922, at *10 (Tex. App.—Houston [1st Dist.] June 30, 2022, pet. denied) (mem. op.).

Here, the essential terms of the parties' settlement agreement were dictated into the record, and counsel for the parties agreed on the record that their recitation comprised "the entirety of the settlement between the parties of all issues in this case." To confirm the parties understood the terms of their agreement, the trial court spoke directly to the parties:

The Court: All right. I'll ask your clients here that –

You're here. You all have heard your attorneys, and you've entered into some discussions herein this morning for a couple of hours. And I applaud your efforts for doing that, but I'm going to ask each one of you if you understand the terms of this settlement agreement?

Unidentified Party: I do.

Unidentified Party: (Moving head up and down.)

The Court: Yes? I have to hear "Yes" or "No."

Unidentified Party: I do.

The Court: Okay.

Unidentified Party: Yes.

The Court: Yes?

Unidentified Party: Yes.

The Court: Yes. Okay. And so we're on the record . . . So that's an affirmative response by all, and I further ask you: Do you have any questions

|  |  |
|---|---|
|  | of your counsel here today before the Court renders a judgment?  No?  No?  No?  No? |
| Unidentified Party: | No, Your Honor. |
| The Court: | Do you have any questions of the Court?  Do you fully understand?  Do you have any questions of me before we go?  No?  No?  No?  No?  All right. |
|  | . . . |
| The Court: | The last thing I'm going to ask you is if you consent to and you request the Court to enter the judgment herein today, as prayed for?  Yes?  Yes?  Yes?  Yes?  "Yes," an affirmative response by all. |
|  | . . . |
| The Court: | The Court will render a judgment herein, as dictated by the terms of your settlement agreement.  Ask that you go forth and prepare the closing documents accordingly.  If there's nothing further, congratulations. |

During the settlement conference, the parties did not indicate they intended for a formal agreement to be executed as a condition to being bound by the terms of their settlement agreement.  Nor did Appellees produce any evidence in support of their argument that that was the parties' intent.  Appellants thus did not establish as a matter of law that the settlement agreement read into the record manifested an intent not to be bound.

## 2.  Performance, Breach, and Damages

In their Summary Judgment Motion, Appellees also argued that Triton had no evidence to support the elements of performance, breach, or causation to support its breach of contract claim.  They argued without more, that "[Triton] lack[ed] any competent summary judgment evidence as to any of the elements above.  Accordingly, the cause of action for breach of contract should be dismissed."

In response to Appellees' Summary Judgment Motion, Triton attached to its response the transcript of the June 25, 2019 settlement read into the trial court's record, a July 31, 2021 email exchange between counsel regarding a docket control order;[19] the Agenda of the Pine Village Public Utility District's July 10, 2019 board of directors meeting; the declaration of David Aitken, Triton's founding member and Chief Executive Officer; documents purportedly produced in discovery by the VanDyk Appellees; and the declaration of Shannon Waugh, owner of a website design company that "often competes with Triton Consulting Services, LLC and Touchstone District Services, LLC."  Appellees did not file a reply or present any evidence in support of their Summary Judgment Motion.

---

[19]  This exhibit was attached to support Triton's argument that the Summary Judgment Motion was untimely, an argument not raised on appeal.

There is also no indication in the record that Appellees objected to any of the evidence attached to Triton's response.[20]

### a. Performance

Triton argues it "presented evidence that it completely performed its portion of the agreement, and that [Appellees] received the benefit of their bargain" because in "exchange for [Appellees'] promises, Triton agreed to the entry of final judgment dismissing its case." Triton agreed on the record during the settlement hearing to "a full release of all the defendants of all current causes of actions and any known or unknown causes of action" and Appellees agreed to release all counterclaims. Triton argued in its Summary Judgment Response that its

> only obligation under the contract was to release its claims against [Appellees] (which was accomplished by the Final Judgment). To the extent [Appellees] argue [Triton] failed to execute a written settlement agreement prior to [Appellees'] breach, there is simply no evidence to support this fact. [Appellees'] counsel agreed to prepare a settlement agreement consistent with the terms dictated on the record. There is no evidence [Appellees] presented [Triton] with a settlement agreement consistent with those terms prior to the filing of this second lawsuit so as to trigger any performance obligation by [Triton].

Appellees do not dispute that the 2018 Lawsuit was dismissed or that they were released from the claims asserted in the lawsuit. Nor did Appellees submit any evidence in support of their Summary Judgment Motion or in response to

---

[20] Appellees objected to a previous declaration of David Aitken when it was submitted in response to a separate summary judgment motion filed by the CWE Appellees, which is not before us on appeal. The trial court ruled on the objection but apparently not on CWE's summary judgment motion.

Triton's response or evidence. Triton thus presented more than a scintilla of evidence in support of the performance element of its breach of contract claim. *See Entergy Gulf States, Inc. v. Isom*, 143 S.W.3d 486, 490 (Tex. App.—Beaumont 2004, pet. denied) (noting non-movant defeats no-evidence summary judgment motion "by producing more than a scintilla of probative evidence raising a genuine issue of material fact" on each element of challenged claim).

### b. Breach

We equally find that Triton satisfied its no-evidence evidentiary burden with respect to the breach element of its claim. Triton proffered evidence concerning Appellees' alleged violation of their non-disparagement and non-solicitation obligations. Waugh, the owner of Off Cinco, a website design company that "often competes" with Triton and Touchstone, stated in her unsworn declaration[21] that Simon "disparage[d]" Triton in front of her and one other person[22] on August 20, 2019 during a meeting called to allow Off Cinco, Triton, and Touchstone to

---

[21] Unsworn declarations are competent summary judgment evidence if they satisfy the rules set forth in Section 132.001 of the Civil Practice and Remedies Code. *Chagoya v. Vilchis*, No. 01-22-00864-CV, 2024 WL 3417049, at *4 (Tex. App.—Houston [1st Dist.] July 16, 2024, no pet. h.) (mem. op.). Section 132.001 requires the unsworn declarations be written and subscribed as true under penalty of perjury. Waugh's unsworn declaration satisfied these requirements. TEX. CIV. PRAC. & REM. CODE § 132.001(c).

[22] According to Waugh's declaration, the other person in the room was the spouse of the owner of Tax Techy, "a Tax Assessor Collector in the industry."

present a proposal to the board of directors for a website redesign.[23]  According to

Waugh, Simon told her that Triton had shown up to board meetings uninvited,

pitched Triton's services at inappropriate times, and was "unprofessional."  He also

talked in front of Waugh "about Triton's business practices and how he disagreed

with the way they went about their business[.]"  In addition, in his sworn

declaration, Aitken identified three entities Touchstone purportedly solicited within

a year of the parties' agreed judgment in violation of the parties' agreement:  Fort

Bend County Levee Improvement District ("LID") 7, Fort Bend County MUD 41,

and Pine Village Public Utility District, all of which he claimed were Triton

customers on June 25, 2019, when the agreed judgment was entered.

In their brief, Appellees argue that this evidence is insufficient because

Touchstone did not solicit Fort Bend County LID 7 until after the district

terminated Triton, Appellees provided different services to Fort Bend County

MUD 41 for which Triton was not invited to bid, and Appellees never sent a

proposal to Pine Village Public Utility District.  Appellees, however, never made

---

[23]  Appellees argue in their brief that they objected to Waugh's declaration because it was not produced in discovery.  This argument was not before the trial court during the summary judgment proceeding, as it was only raised in response to Triton's motion for reconsideration.  *See Robinson v. Tex. Timberjack, Inc.*, 175 S.W.3d 528, 530 (Tex. App.—Texarkana 2005, no pet.) ("Summary judgment cannot be affirmed on grounds raised for the first time in a response to a motion for new trial.").  In addition, the summary judgment rules do not require that declarations or affidavits proffered in support of or in response to a summary judgment motion be produced in discovery prior to their use in summary judgment proceedings.

those arguments to the trial court in support of the Summary Judgment Motion nor did they attach to their motion the various emails and documents they now cite as evidence in their brief. We may therefore not consider their argument or the referenced evidence. *See Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 306 (Tex. App.—Fort Worth 2001, no pet.) ("A motion for summary judgment must stand or fall on the grounds expressly presented in the motion. . . . Simply stated, a summary judgment cannot be affirmed on grounds never presented to the trial court by the motion.") (citations omitted).

And even if we could consider their argument or the evidence, they would at most create a fact issue on the element of breach precluding summary judgment. We thus hold that Triton presented more than a scintilla of evidence on the breach element of its cause of action precluding summary judgment. *See Entergy Gulf States*, 143 S.W.3d at 490 (stating no-evidence summary judgment is improper if non-movant presents more than scintilla of evidence on each element of challenged claim).

### c. Damages

In response to Appellees' Summary Judgment Motion, Triton argued it had been damaged "in the amount of lost revenue and business opportunities." It argued it lost two clients—Fort Bend County LID 7 and Fort Bend County MUD 41—as a result of Appellees' actions and "those losses account[ed] for nearly

$87,000 in damages." According to Aitken's declaration, which Triton attached to its response, Triton incurred two measures of damages: attorney fees of more than $138,254 and lost profits of $87,000 as the result of the loss of Fort Bend County LID 7 and Fort Bend County MUD 41 to Touchstone. Aitken stated that "Triton's average revenue from Fort Bend County LID 7 was $37,281.29"; the "average cost of a municipal district bond is $50,000"; and "[a]s of October 31, 2021, the Raley & Bowick law firm has billed $138,254.76 in attorney fees on this matter."

Appellees argue that Aitken's declaration is conclusory and further that it should not be considered because he is an interested witness. Triton responds that the testimony of an interested witness goes to credibility and could still raise a fact question. It also argues the testimony is not conclusory as it was supported by "direct evidence produced by Appellees and Appellees' deposition testimony," and Appellees did not controvert or raise any objections to the declaration in the trial court.

Challenges to the "affidavits of interested witnesses present a defect of form requiring an objection in the trial court." *Ahumada v. Dow Chem. Co.*, 992 S.W.2d 555, 562 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).[24] Because

---

[24] Moreover, even if preserved, in "a summary judgment proceeding, the testimony of an interested witness usually creates a fact issue as to his credibility." *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 719 (Tex. App.—San Antonio 1994, writ denied) (citations omitted); *Arraby Properties, LLC v. Brown*, 695 S.W.3d 532, 552 (Tex. App.—Houston [1st Dist.] 2023, pet. filed) ("Generally, the

Appellees did not raise their "interested witness" argument in the trial court, the issue was not preserved for appeal. A litigant, however, may raise a conclusory objection to an affidavit, a defect of substance, for the first time on appeal. *Ortega v. Cach, LLC*, 396 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Appellees argue that eight statements made by Aitken in his affidavit are "not factual but instead [are] . . . conclusory statements and legal conclusions." The purportedly conclusory statements are:

- Defendants breached the non-disparagement agreement.

- Defendants breached the non-solicitation agreement prior to the expiration of the 365 days.

- Defendants solicited Fort Bend County LID 7 prior to June 24, 2020.

- Triton lost business opportunities as a result of Defendant's solicitation.

- Triton's average revenue from Fort Bend County LID 7 was $37,281.29.

- Defendants solicited Fort Bend County MUD 41 prior to June 24, 2020.

- Triton lost business opportunities as a result of Defendant's solicitation.

- The average cost of a municipal district bond is $50,000.

"A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 50 (Tex.

---

testimony of an interested witness . . . does no more than raise a fact issue, and whether to credit that testimony is a question for the factfinder.").

App.—San Antonio 2005, no pet.) (quoting *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.)). Triton attached to its summary judgment response documents that provide underlying facts in support of most of the statements about which Appellees complain. For example, Triton attached documents produced by some of the Appellees that address the alleged solicitation by Touchstone of LID 7 in September and December 2019, and minutes of the board meeting when the Fort Bend County LID 7 board voted to terminate Triton's contract effective December 31, 2019. In addition, Triton attached the unsworn declaration of Shannon Waugh, who testified about Simon's alleged disparagement of Triton to others in the industry. And Triton attached documents obtained during discovery that reflected Appellees' alleged retention and subsequent firing of Triton by Fort Bend County MUD 41 prior to June 24, 2020. With the exception of Aitken's complained of final statement regarding the average cost of a municipal bond, we conclude the statements about which Appellees complain are not conclusory because other evidence attached to Triton's response supplied facts supporting the statements in his affidavit.

Appellees argue that since Triton did not provide competent summary judgment evidence as to "actual damages," it is not entitled to recover attorneys' fees because it is not a prevailing party under Chapter 38 of the Texas Civil Practice and Remedies Code. But Triton does not seek to recover attorneys' fees

41

as a prevailing party. Rather, Triton seeks to recover attorneys' fees as actual damages claiming it incurred the fees as a result of Appellees' alleged breaches.[25] *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 175 (Tex. 2013) (orig. proceeding) ("While attorney's fees incurred in prosecuting this [breach of contract] claim are not compensatory damages, the fees comprising the breach-of-contract damages are.").

Moreover, we believe Triton satisfied its summary judgment burden to present more than a scintilla of evidence regarding its claimed damages, at least with respect to the revenue it would have recouped from working on the Fort Bend County LID 7 project. *See Wright v. CAE SimuFlite, Inc.*, No. 05-07-00759-CV, 2008 WL 2841165, at *3–4 (Tex. App.—Dallas July 24, 2008, no pet.) (mem. op.) ("Opinions or estimates of lost profits may be competent evidence if that opinion or estimate is based on objective facts, figures, or data from which the amount of lost profits may be ascertained.") (citing *KMG Kanal–Muller–Gruppe Deutschland GmbH & Co. KG v. Davis,* 175 S.W.3d 379, 391 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

Given that Triton presented more than a scintilla of evidence in support of each element of its contract claim, we now turn to the traditional portion of the Summary Judgment Motion to determine whether it was providently granted.

---

[25]  Appellees do not challenge the reasonableness or necessity of the attorneys' fees Triton seeks.

**B.    Traditional Summary Judgment**

In their traditional Summary Judgment Motion, Appellees argued that (1) there is no contract because the parties never executed a settlement agreement; (2) the contract under which Triton tries to sue is actually a final judgment; (3) Triton judicially admitted that the trial court rendered a final judgment; and (4) Triton's remedy is limited to an action to enforce the judgment.

Appellees attached a single exhibit[26] to their Summary Judgment Motion consisting of a response filed by Triton in a separate post-judgment action it filed against Appellees in June 2020.   In that separate action, Triton filed five applications for writs of garnishment against each of the Appellees to collect payments due under the parties' settlement agreement, which Triton alleged remained outstanding.  According to Appellees, Triton admitted in that action that "the terms it alleges were breached are [actually] a final judgment."[27] Appellees assert that this is a judicial admission by Triton "that the settlement terms

---

[26]    In reviewing the trial court's order granting Appellees' Summary Judgment Motion, we review only those documents attached to the Summary Judgment Motion. *See Trimble v. Gulf Paint & Battery, Inc.*, 728 S.W.2d 887, 888 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("A motion for summary judgment must be supported by its own summary judgment proof. . . . Verified copies of documents, in order to constitute part of the summary judgment evidence, must be attached to the [summary judgment] affidavit.") (internal citations omitted).

[27]    Neither Triton's applications for writs of garnishment nor Appellees' motions to dissolve the writs are in the appellate record.  Appellees' Summary Judgment Motion states that the five applications for writs of garnishment were filed on June 1, 2020 in Cause Nos. 2018-46007A, 2018-46007B, 2018-46007C, 2018-46007D, and 2018-46007E in the 189th District Court of Harris County, Texas.

constitute a final judgment." Thus, according to Appellees, Triton's remedy is limited to an action to enforce the final judgment. And in fact, Triton already "sought post-judgment enforcement actions in the First Lawsuit and separate from this case."

We have already concluded that the parties reached a settlement agreement in the 2018 Lawsuit, that the parties dictated the essential terms of their agreement into the record, and that Appellees did not establish as a matter of law that the contract is unenforceable because the agreement was not reduced to writing. We now consider Appellees' remaining argument, that because the settlement agreement resulted in the rendition of judgment in the 2018 Lawsuit, Triton's breach of contract claim is somehow barred, and its only remedy is one to enforce the final judgment against Appellees.

In its response to the Summary Judgment Motion, Triton acknowledged the filing of its post-judgment action and explained that its statements regarding the rendition of judgment were unremarkable. Triton explained that two distinct events occurred on June 25, 2019: (1) the parties entered into a settlement agreement that was dictated on the record, and (2) the trial court entered final judgment based on the terms of the parties' settlement agreement. According to Triton, there is nothing contradictory about these two events.

We agree. These two events may co-exist without contradiction. Indeed, the parties do not dispute that the final judgment was rendered based on the agreement of the parties and pursuant to the settlement terms dictated into the record. In any event, regardless of whether the contract is identified as a settlement agreement or a final judgment, we hold that a breach of contract action is a proper way for Triton to enforce it. "The proper way to enforce an agreed judgment is by a lawsuit in the nature of a contract action." *Direct Advert., Inc. v. Willow Lake, LP*, No. 13-14-00212-CV, 2016 WL 1393974, at *3 (Tex. App.— Corpus Christi–Edinburg Apr. 7, 2016, no pet.) (mem. op.).[28] That is because an agreed judgment "must be interpreted as if it were a contract between the parties and the interpretation is, accordingly, governed by the laws related to contracts." *Id.* (citing cases); *see also Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 71 (Tex. 1997) (observing that suit on agreed judgment ordinarily sounds in contract); *Ex parte Jones*, 358 S.W.2d 370, 375 (Tex. 1962) ("This agreed judgment must be interpreted as if it were a contract between the parties and the interpretation thereof

---

[28] In *Direct Advertising, Inc. v. Willow Lake, LP*, No. 13-14-00212-CV, 2016 WL 1393974 (Tex. App.—Corpus Christi–Edinburg Apr. 7, 2016, no pet.) (mem. op.), the Corpus Christi–Edinburg Court of Appeals held that claims based on an alleged failure to comply with the terms of an agreed judgment were properly brought as a breach of contract action. *Id.* at *3. The court observed, "This action could not have been brought as part of its earlier suit because Direct Advertising did not engage in the conduct alleged—i.e., breaching the agreed judgment—until after it was signed." *Id.*

is governed by the laws relating to contracts, rather than laws relating to judgments."); *Canadian River Mun. Water Auth. v. Hayhook, Ltd*, 469 S.W.3d 301, 304 n.4 (Tex. App.—Amarillo 2015, pet. denied) ("Agreed judgments are interpreted as if they were contracts, and their interpretation is governed by the laws relating to contracts, not judgments."); *Gracia v. RC Cola-7-Up Bottling Co.*, 667 S.W.2d 517, 519–20 (Tex. 1984) ("It is settled law that the construction of an agreed judgment and a determination of the obligations imposed upon the parties are governed by the rules applicable to contracts generally."); *Thieleman v. Prokop*, No. C14-86-699-CV, 1987 WL 12509, at *2 (Tex. App.—Houston [14th Dist.] June 18, 1987, no writ) (not designated for publication) ("Noncompliance with the terms of an existing agreed judgment can be the basis for a new cause of action. An agreed judgment must be interpreted as if it were a contract between the parties and the interpretation thereof is governed by the laws relating to contracts. The proper way to enforce an agreed judgment . . . is by a lawsuit in the nature of a contract action.") (internal citations omitted); *Pate v. Pate*, 874 S.W.2d 186, 188 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("Agreed judgments, once rendered, are contracts between the parties that excuse error and operate to end all controversy between the parties.").

To the extent Appellees contend Triton's breach of contract action constitutes a collateral attack on the final judgment, we disagree. "A collateral

attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005); *see also Zarate v. Sun Operating Ltd., Inc.*, 40 S.W.3d 617, 620 (Tex. App.—San Antonio 2001, pet. denied) ("A collateral attack is any proceeding to avoid the effect of a judgment which does not meet all the requirements of a valid direct attack.") Triton is not challenging the validity of the final judgment rendered in the 2018 Lawsuit, nor is it seeking to relitigate the matters settled in that action. Triton seeks instead to enforce the parties' settlement agreement to recover damages for breaches it alleges occurred *after* the parties reached settlement, including Appellees' alleged failure to make the payments contemplated under the settlement agreement, as well as their alleged solicitation of Triton's customers and disparagement of Triton, all of which Triton alleges occurred after the parties settled the 2018 Lawsuit and constitute a breach of the settlement agreement. Such an action is not a collateral attack on the final judgment. *See Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex. 1988) (defining collateral attack as "an attempt to avoid the effect of a judgment brought in a proceeding brought for some other purpose"); *Armentor v. Kern*, 178 S.W.3d 147, 149 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (same).

We thus conclude that Appellees' traditional Summary Judgment Motion lacks merit with respect to its argument that there is no enforceable contract, that Triton's remedy is limited to an action to enforce the judgment, and that Triton's action is an improper collateral attack on a final judgment. The trial court erred to the extent it granted summary judgment in Appellees' favor on these bases.

## Conclusion

We reverse the trial court's summary judgment and remand for proceedings consistent with this opinion.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Kelly, Landau, and Rivas-Molloy.